UNITED STATES of America, Appellee,

v.

Alberto BRAVO; Griselda Blanco; Bruno Bravo; Francisco A. Armedo–Sarmiento; Jose A. Cabrera–Sarmiento; Edgar Restrepo–Botero; Leon Velez; Bernardo Roldan; Arturo Gonzalez; Jorge Gonzalez; Libardo Gill; Ruben Dario Roldan; Marconi Roldan; Carmen Gill; Carlos Marin; Beatrice Gonzalez; Nina Nino; Oscar Perez; Ernesto Guello; Julian Carrion Arco; Gilberto Rojas; Guillermo Palacios; Arturo Zapata; James Mario Gaviria; Gabriel Correa; Alvaro Cabrera–Sarmiento; Antonio Romero; Elsa Cabrera; Cesar J. Riveros–Rincon; William Rodriguez–Parra; Olegario Montes–Gomez; Ramiro San Cocho; Humberto Sandoval; Alberto Luis Herrara; Rhonda Sue Shirah; William Andries; Luis Estrada, Defendants,

Gaston Robinson, Defendant–Appellant.

No. 496, Docket 92–1395.

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1993.

Decided Nov. 24, 1993.

**80**

Stephen F. Markstein, New York City, for defendant-appellant Gaston Robinson.

Miguel A. Estrada, Sp. Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., Dennis J. McInerney, and Andrew C. McCarthy, Asst. U.S. Attys., S.D.N.Y., of counsel), for appellee.

Before: OAKES, ALTIMARI, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Gaston Robinson appeals from a judgment of conviction entered June 23, 1992 in the United States District Court for the Southern District of New York, John M. Cannella, *Judge,* upon Robinson's recapture after he was a fugitive for more than fifteen years as a result of his flight during his trial before a jury. Trial continued *in absentia,* and Robinson, along with his codefendants, was convicted on January 23, 1976. Upon Robinson's recapture, the district court exercised its discretion to refrain from deciding the merits of Robinson's postconviction motions (1) for acquittal, (2) for a new trial, and (3) to supplement the trial record, concluding that Robinson waived his right to have these motions adjudicated by virtue of his flight during trial and absence for over fifteen years.

Robinson contests on appeal (1) the district court's refusal to consider his postconviction motions, and (2) the sentence imposed upon him.

We affirm.

## Background

An indictment returned on April 30, 1975 charged Robinson, his codefendants, and unindicted coconspirators with engaging in a conspiracy to manufacture in Columbia and elsewhere, import into the United States, possess with intent to distribute, and distribute cocaine (count one) and marijuana (count two) in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1), 952(a), 955, 959, 960(a), and 960(b).[1] Two prior opinions of this court, familiarity with which is assumed, have resulted from trials generated by this indictment. *See United States v. Blanco,* 861 F.2d 773 (2d Cir.1988), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1139, 103 L.Ed.2d 200 (1989); *United States v. Armedo–Sarmiento,* 545 F.2d 785 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 1331, 51 L.Ed.2d 595 (1977).

Trial of the indictment against twelve of the defendants, including Robinson, commenced on October 30, 1975 and continued for fourteen weeks. *See Armedo–Sarmiento,* 545 F.2d at 789. The main witnesses regarding Robinson's activities were William Andries, a narcotics smuggler who became a cooperating witness for the government, and

---

1. A third count charged two codefendants with using and carrying a firearm during the commission of the crimes charged in counts one and two, in violation of 18 U.S.C. § 924(c).

Leonel Fernandes, a former maitre d'hotel of a restaurant in Miami, Florida.

Andries testified before the jury that: (1) Robinson was present at a meeting in November 1973 with Andries and other members of the conspiracy during which the conspirators discussed a shipment of twenty-eight kilos of cocaine and 5,000 pounds of marijuana that was due to arrive on the Providence Trader, a large oceangoing vessel; (2) after an initial failed attempt to intercept the Providence Trader, the conspirators were ultimately successful in offloading the cocaine and a portion of the marijuana to a 23–foot courier boat at a location off the coast of Miami; (3) Robinson was engaged to, and did, navigate the courier boat to and from its rendezvous with the Providence Trader; (4) at the time of that engagement, Robinson inquired regarding the cargo that was to be offloaded, and Andries responded that it was 5,000 pounds of marijuana; and (5) Robinson accepted a total of $40,000 in payments from Andries for Robinson's efforts in retrieving the cocaine and marijuana.

Andries also testified outside the presence of the jury, when the court permitted examination of Andries by Robinson's counsel (subsequent to Robinson's flight) to determine whether Andries would be called as a defense witness for Robinson. Andries then testified that one Pepe Cabrera had paid Robinson an additional $40,000 for bringing in the cocaine from the Providence Trader. Andries also testified at that time that he "d[idn't] think [Robinson] knew I was picking up cocaine until I actually picked it up from the [Providence Trader]," and that Andries was "sure [Robinson] didn't know for sure what he was picking up, especially the cocaine." Andries also explained, however, that of the $40,000 that he gave Robinson, $20,000 was "for the trip" and another $20,000 was "extra for bringing in the cocaine." When Andries testified that he told Robinson why he was being paid the extra $20,000, Robinson's

counsel decided not to call Andries as a defense witness.

Fernandez testified that on several occasions in the fall of 1973 he had seen Robinson in the company of Cabrera, who Fernandez knew to be involved in the importation of cocaine and marijuana. Fernandez also testified that he had seen Robinson, Cabrera, and Andries depart by boat from Miami to pick up a "big load coming in from Colombia," and that Cabrera had informed him that Robinson's participation was necessary because Robinson was "familiar with traveling in the ocean" and therefore would "be like the captain of the voyage." Fernandez further testified that when he visited Cabrera the next day at Cabrera's apartment, Cabrera (1) informed him that the prior day's trip was a success, (2) displayed thirteen kilograms of cocaine in a suitcase, and (3) stated that approximately two thousand pounds of marijuana were in a nearby truck waiting to be transported to New York.

On November 24, 1975, following the testimony of Andries and Fernandez and after the court had, on motion of the government, increased Robinson's bail from $50,000 to $100,000, Robinson failed to appear. Judge Cannella issued a bench warrant for Robinson's arrest, further increased his bail to $1,000,000, and continued the trial of Robinson *in absentia*.[2] Robinson's bail was ordered forfeited on December 1, 1975.

At the close of the government's case-in-chief, all defendants, including Robinson, joined in a motion to dismiss the second count. Because Robinson had already absconded, the motion was made on his behalf by his counsel. The district court granted that motion "for lack of proof of a conspiracy relating solely to marijuana." *Armedo–Sarmiento*, 545 F.2d at 789 n. 1.

On January 23, 1976, the jury returned guilty verdicts against all twelve defendants as to count one of the indictment.[3] The district court refrained from sentencing Rob-

---

2. Two of Robinson's codefendants also fled and were tried *in absentia*. *See Armedo–Sarmiento*, 545 F.2d at 789.

3. The nine defendants who did not flee subsequently appealed. We affirmed except as to Li-

bardo Gill and Carmen Gill, whose convictions we reversed and remanded for retrial. *See Armedo–Sarmiento*, 545 F.2d at 797. The government did not seek to retry them.

inson *in absentia.* Robinson remained at large until May 23, 1991, when the United States Coast Guard apprehended him aboard the Endeavor I, a vessel travelling on the high seas approximately 140 miles south of the Panama Canal with a cargo of approximately 2,000 kilograms of cocaine.[4]

Following his recapture, Robinson moved before Judge Cannella for acquittal pursuant to Fed.R.Crim.P. 29(c), for a new trial pursuant to Fed.R.Crim.P. 33, and to supplement the record pursuant to Fed.R.App.P. 10(e). Robinson contended that: (1) there was insufficient evidence of his guilt to sustain the jury verdict; (2) the court impermissibly amended the indictment when it dismissed count two and allowed the jury to consider evidence of involvement in marijuana in support of the cocaine conspiracy charged in count one, and/or there was prejudicial variance between count one and the evidence that the jury was permitted to consider; (3) pursuant to *United States v. Orozco–Prada,* 732 F.2d 1076, 1083–84 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 155, 83 L.Ed.2d 92 (1984), the government must elect between having Robinson (a) sentenced under the penalties applicable to a marijuana conspiracy or (b) retried on count one; and (4) pursuant to *United States v. Selva,* 546 F.2d 1173 (5th Cir.1977), and Fed.R.App.P. 10(e), Robinson was entitled to a hearing to supplement the record with respect to missing portions of the trial transcript that contained the government's principal summation, and to a new trial "if a substantially verbatim reconstruction of the pertinent parts of the summation were not possible."

Judge Cannella, relying on prior decisions of this court which have applied the "disentitlement doctrine" to refuse to adjudicate the merits of a fugitive's claims of trial error, declined to decide the merits of Robinson's motions, stating that:

> By declining to consider Robinson's motion[s], other defendants will be discouraged from escaping and judicial resources will be used more efficiently. In addition, the delay occasioned by Robinson's fifteen year absence would clearly prejudice the

prosecution should there be a new trial. Memories of the witnesses are certain to have dimmed in fifteen years and as Robinson's motion to supplement the trial record attests, evidence has already been lost. Robinson's contention that the government's ability to retry the case has been enhanced because previously unavailable witnesses may be able to testify is absurd. It would be unconscionable to allow Robinson to benefit from his deliberate attempt to evade justice. *See [United States v.] Matista,* 932 F.2d [1055, 1058 (2d Cir. 1991) ]; [*United States v.*] *Persico,* 853 F.2d [134, 138 (2d Cir.1988) ].

The court then sentenced Robinson to fifteen years imprisonment and a $25,000 fine in accordance with the statutes applicable to his offense as they existed at the time of his conviction.

This appeal followed.

## Discussion

Robinson contends on appeal that the district court abused its discretion by invoking the disentitlement doctrine and refusing to rule on his postconviction motions, and argues to us the merits of the claims presented by those motions. He also contends that his sentence was improper because the district court "refused to look at the facts actually proved at the trial, did not state what facts were being relied upon, and failed to make rulings required by Fed.R.Crim.P. 32(c)(3)(D)." We address these issues in turn.

### A. *The Disentitlement Doctrine.*

■ Robinson argues that Judge Cannella abused his discretion in declining to consider the merits of Robinson's various motions. He contends that whatever authority courts of appeal may have to refuse to rule on claims by fugitives or former fugitives, district courts must adjudicate the postconviction claims of fugitives who are recaptured before sentence is pronounced and judgment is entered. We disagree.

In *United States v. Sacco,* 563 F.2d 552 (2d Cir.1977), *cert. denied,* 434 U.S. 1039, 98

---

4. This contraband provided the basis for an indictment of Robinson that is pending in the Unit-

ed States District Court for the Southern District of New York, Thomas P. Griesa, *Chief Judge.*

S.Ct. 779, 54 L.Ed.2d 789 (1978), Sacco filed post-trial motions challenging his convictions in each of three district courts, including the Southern District of New York.[5] On appeal to this court from his conviction in the Southern District for extortion and conspiracy to commit extortion, he contended that the district court had improperly refused to hear his post-trial motions. Sacco had escaped from custody during the hearing of his motion in the Middle District of Florida. *See id.* at 554 n. 2, 558. His motion (apparently presented by counsel in his absence) was subsequently denied on the merits in the District of Maryland. *See id.* at 559.

A codefendant made an identical motion regarding the challenged evidence in the Southern District of New York. *See id.* at 557–58. Sacco was apprehended before the hearing of his codefendant's motion, but Sacco's application to reinstate his own motions was denied, and his post-trial motions were denied "for his willful failure to appear." *Id.* at 558. We affirmed, stating:

> In accord with the district court, we believe a defendant should not be permitted to abuse the process of the court in such a fashion. We think the district judge was correct in holding that, *on a claim for post-conviction relief, as on a direct appeal,* one who has escaped from custody is not entitled "to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970). Accord, *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *United States v. Sperling,* 506 F.2d 1323, 1345 n. 33 (2d Cir.1974) [, *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975) ]; *Brinlee v. United States,* 483 F.2d 925 (8 Cir.1973); *United States v. Shelton,* 482 F.2d 848 (5 Cir.

1973); *Hitchcock v. Laird,* 456 F.2d 1064 (4 Cir.1972); *United States v. O'Neal,* 453 F.2d 344 (10 Cir.1972); *Johnson v. Laird,* 432 F.2d 77 (9 Cir.1970). Nor was the district judge required to reinstate the motions when Sacco was returned to federal custody and he did not abuse his discretion in refusing to do so. *United States v. Shelton,* 508 F.2d 797, 799 (5 Cir.[), *cert. denied,* 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 44 (]1975). See also *Estelle v. Dorrough, supra.*

*Id.* at 558–59 (footnote omitted, emphasis added).[6]

*Sacco* thus establishes that in this circuit, district courts enjoy discretion to refuse to rule on the merits of a defendant's postconviction claims of trial error when the defendant has fled from justice. Such discretion has been exercised in analogous contexts, as well. *See, e.g., United States v. Eng,* 951 F.2d 461, 464–67 (2d Cir.1991) (affirming district court ruling that disentitlement doctrine barred fugitive resisting extradition from defending related civil action); *Board of Governors of Fed. Reserve Sys. v. Mahfouz,* No. 91 CIV. 5096 (MGC), 1992 WL 183556, at *1–3, 1992 U.S.Dist. LEXIS 10866, at *3–9 (S.D.N.Y. July 23, 1992) (applying disentitlement doctrine to deny fugitive's motion for expedited discovery in related civil action brought by government); *United States v. Real Property Located at Incline Village,* 755 F.Supp. 308, 313–14 (D.Nev.1990) (doctrine applied to bar fugitive in criminal case from defending related forfeiture proceeding). *But cf. United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith,* 801 F.Supp. 984, 997–99 (E.D.N.Y.1992) (declining to apply doctrine to corporations allegedly controlled by fugitive when "no credible evidence" of that control presented), *aff'd,* 6

---

**5.** Sacco was prosecuted for extortion in the Southern District of New York, the District of Maryland, and the Middle District of Florida, *see* 563 F.2d at 554 n. 2, and contended in post-trial motions in all of these courts that all three prosecutions were based upon the same illegally seized evidence. He apparently made more than one post-trial motion in the Southern District.

**6.** We also noted that the denial of Sacco's primary post-trial motion was proper because of the

district court's confirmation and adoption of the Maryland district court's denial of Sacco's identical motion on the merits and the Southern District's denial of a codefendant's identical motion, *see* 563 F.2d at 559, and because "Sacco's willful failure to appear was a waiver of his right to be present and actively participate." *Id.* at 559 n. 10 (citing *United States v. Tortora,* 464 F.2d 1202 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972)).

F.3d 37 (2d Cir.1993); *United States v. Veliotis*, 586 F.Supp. 1512, 1514–17 (S.D.N.Y. 1984) (in exercise of discretion, court declined to invoke doctrine to bar fugitive from contesting restraint of stock in forfeiture proceeding).

The disentitlement issue arises more frequently in the context of appeals than of postconviction applications to district courts. The Supreme Court recently addressed the issue in *Ortega–Rodriguez v. United States*, —— U.S. ——, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). In that case, Ortega–Rodriguez fled prior to sentencing after he was convicted of narcotics offenses, and was sentenced *in absentia*. *See* —— U.S. at ——, 113 S.Ct. at 1202. His codefendants appealed, but no appeal was taken in his behalf. *See id.* He was apprehended eleven months after he fled, and made postconviction motions for resentencing and acquittal. *See id.* at —— ——, 113 S.Ct. at 1202–03. The district court reduced his sentence, but denied his motion for acquittal. *See id.* at ——, 113 S.Ct. at 1203. He then sought to appeal from the final judgment embodying those determinations, but the Eleventh Circuit dismissed his appeal without reaching the merits in a per curiam order. *See id.* The Supreme Court vacated and remanded. *Id.* at ——, 113 S.Ct. at 1210.

The Court noted with approval prior cases in which it had ruled "that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Id.* at ——, 113 S.Ct. at 1203. It concluded, however, that when a defendant becomes a fugitive before an appeal is taken, application of the disentitlement rule requires "some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response." *Id.* at —— —— ——, 113 S.Ct. at 1205–06 (footnote omitted). The Court vacated the Eleventh Circuit's ruling because the court of appeals had automatically dismissed Ortega–Rodriguez's appeal without determining whether such a connection existed. *See id.* at ——, 113 S.Ct. at 1207.

The Court addressed two specific situations that could meet this standard. First, it considered the "concern that a long escape, even if ended before sentencing and appeal,

may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal." *Id.* at ——, 113 S.Ct. at 1208 (citations omitted). The Court responded to that concern as follows:

> We recognize that this problem might, in some instances, make dismissal an appropriate response. In the class of appeals premised on insufficiency of the evidence, however, ... retrial is not permitted in the event of reversal, and this type of prejudice to the Government will not serve as a rationale for dismissal.

*Id.*

The Court also discussed the problem posed when one of several codefendants absconds, with the result that multiple appeals will be required if the absconding defendant is allowed to appeal after his recapture. The Court stated in this regard:

> Here, for instance, petitioner's flight prevented the Court of Appeals from consolidating his appeal with those of his codefendants, which we assume would be its normal practice. If the Eleventh Circuit deems this consequence of petitioner's flight a significant interference with the operation of its appellate process, then, under the reasoning we employ today, a dismissal rule could properly be applied.

*Id.* at ——, 113 S.Ct. at 1209 (citation omitted).

Further, the Court recognized that "because flight cannot fairly be construed as a waiver of appeal from errors occurring after recapture, defendants who flee presentencing retain their right to appeal *sentencing* errors, though they lose the right to appeal their *convictions.*" *Id.* at ——, 113 S.Ct. at 1205 (footnote and citation omitted); *see also United States v. Matista*, 932 F.2d 1055, 1057 (2d Cir.1991); *United States v. Alvarez*, 868 F.2d 547, 548 (2d Cir.1989) (per curiam); *United States v. Persico*, 853 F.2d 134, 138 (2d Cir.1988).

Applying these standards here, there can be little doubt that Robinson's fifteen-year absence has severely undermined the government's ability to assemble witnesses and evi-

dence for any retrial that might result from a determination of trial error either by the district court in response to postconviction motions, or by this court on appeal. Further, the appeal of Robinson's codefendants was heard and determined seventeen years ago. Cf. *United States v. Reese*, 993 F.2d 254, 256 (D.C.Cir.1993) (holding, in light of *Ortega–Rodriguez*, "that a defendant whose flight prevents consolidation of his appeal with that of a co-defendant is not entitled to a belated appeal"); *Matista*, 932 F.2d at 1058 (allowing appeals of trial error by recaptured fugitives would encourage piecemeal appeals). We accordingly conclude that the district court did not abuse its discretion in refusing to consider Robinson's claims of trial error.

On this appeal, we will also regard Robinson as disentitled to present claims of trial error, with a single exception. *Ortega–Rodriguez* sends us a mixed signal regarding Robinson's contention that the evidence was insufficient to support his conviction. If he prevails on that claim, there will be no new trial, so the argument of prejudice to the government at retrial does not apply. On the other hand, we could certainly refuse to entertain the claim on the basis that it leads to multiplication of appeals, in view of the resolution of his codefendants' appeal almost two decades ago. We will resolve the issue in this case, without intending to set any precedent of general applicability, by addressing the merits of his insufficiency claim, which is easily resolved. *See United States v. Baccollo*, 725 F.2d 170, 172 (2d Cir.1983) (declining to dismiss appeal on basis of fugitivity because "on the merits, the appeal is so plainly frivolous that we prefer to dispose of the case on that ground"); *cf. Alvarez*, 868 F.2d at 548 (exercising discretion to decline to consider recaptured fugitive's insufficiency claim).

In addition, we note that one of the claims raised in Robinson's postconviction motions is that pursuant to *Orozco–Prada*, the government must elect between having Robinson sentenced under the penalties applicable to a marijuana conspiracy or retried on count one. This contention arguably goes to the validity of his sentence, and will therefore be deemed a claim of sentencing error that is reviewable on this appeal.

On the other hand, Robinson's claims that the indictment was impermissibly amended, that there was prejudicial variance between count one of the indictment and the evidence that the jury was permitted to consider, and that *Selva* entitles him to a hearing regarding missing portions of the trial transcript are all assertions of trial error. The first two claims directly assert trial error, and the only purpose of a *Selva* hearing would be to lay the foundation to contend that trial error occurred in the government's summation, or that the loss of the pertinent transcript prevents Robinson from establishing such trial error. Robinson is disentitled from presenting any of these claims either to the district court or on this appeal, and we accordingly will not consider them.

### B. *Insufficiency of the Evidence.*

Robinson argues that he agreed to participate only in an importation of marijuana, was surprised when he arrived at the Providence Trader and learned that both cocaine and marijuana were to be transported ashore, and accordingly cannot be convicted of participation in a cocaine conspiracy. We disagree.

Andries provided conflicting testimony regarding Robinson's foreknowledge that cocaine would be transferred from the Providence Trader. Accordingly, "viewing the evidence in the light most favorable to the government and construing all possible inferences in its favor," *United States v. Stanley*, 928 F.2d 575, 576 (2d Cir.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Torres*, 901 F.2d 205, 216 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229)), *cert. denied*, —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991), and aware that the government need present only sufficient evidence to enable "any rational trier of fact [to] have found the essential elements of the crime" proved beyond a reasonable doubt, *id.*, we conclude that the jury could rationally have attributed foreknowledge regarding the cocaine to Robinson.

Even more fundamentally, however, it is clear that Robinson became aware that cocaine was transferred from the Providence Trader to the courier boat. Indeed, no claim is made to the contrary. Thereafter, Robinson transported the cocaine ashore from the ocean rendezvous, and accepted payment for doing so. It is accordingly inescapable that at the juncture when the cocaine was transferred from the Providence Trader to the courier boat, and thereafter, Robinson agreed to the possession with intent to distribute, importation, and distribution of the cocaine. *See United States v. Azeem*, 946 F.2d 13, 16 (2d Cir.1991) ("A conspiracy continues after the occurrence of the underlying offense and is not completed until the conspirators receive their payoffs."); *United States v. Fitzpatrick*, 892 F.2d 162, 167 (1st Cir.1989) ("a conspiracy continues until the anticipated economic benefits of the defendant are realized"); *United States v. Mennuti*, 679 F.2d 1032, 1035–36 (2d Cir.1982) (conspiracy prosecution timely where payoffs to defendants occurred within applicable limitations period).

### C. *Sentencing Claims.*

Robinson's first claim of sentencing error is based upon *Orozco–Prada.* In that case, a defendant was convicted of participating in a narcotics conspiracy by laundering its cash proceeds. The count of conviction charged a conspiracy punishable under both 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 841(b)(1)(B). Section 841(b)(1)(A) applies to narcotic drugs such as cocaine, but not to controlled substances that are not narcotics drugs, such as marijuana. Section 841(b)(1)(B) applies to marijuana, and carried a maximum penalty of five years imprisonment and a $15,000 fine. *See* 732 F.2d at 1083. The district court sentenced the defendant to eight years imprisonment and a $25,000 fine pursuant to § 841(b)(1)(A), apparently "on the theory that the evidence presented to the jury supported the inference that at least some of the laundered money was the product of cocaine sales." *Id.* We ruled that in the absence of a special verdict specifying whether the defendant was convicted of a cocaine-related conspiracy or a marijuana-related conspiracy, the government had to elect between a sentence under § 841(b)(1)(B) or a new trial for the defendant. *See id.* at 1084.

*Orozco–Prada* has no application here. Count one of the indictment in this case charged Robinson with participation in a cocaine conspiracy under § 841(b)(1)(A). Count two, which charged him with participation in a marijuana conspiracy under § 841(b)(1)(B), was dismissed and never went to the jury. Both penalty provisions applicable to count one, § 841(b)(1)(A) (possession with intent to distribute) and § 960(b)(1) (importation), provided for a maximum penalty of fifteen years imprisonment and a fine of $25,000. Thus, unlike *Orozco–Prada*, no plausible claim is presented that Robinson's sentence might have exceeded applicable statutory limits.

We also reject Robinson's second argument concerning his sentence. Robinson maintains that in imposing sentence, the district court relied upon incorrect information contained in Robinson's presentence report and failed to comply with Fed.R.Crim.P. 32(c)(3)(D). Specifically, Robinson objected to both the summary of the government's version of Robinson's involvement in the conspiracy as set forth in the presentence report, and to the report's "Evaluative Summary," which described him as a "willing and integral member" of that conspiracy. At the sentencing hearing, however, Judge Cannella stated that he would "consider the remarks of both parties as far as evidence in the case is concerned," but would "apply my own recollection [of the evidence]" and "not necessarily ... the prosecutor's version of what occurred." Immediately thereafter, in the absence of any representation by the prosecution to the contrary, Judge Cannella credited Andries' testimony that Robinson learned of the presence of cocaine aboard the Providence Trader only when the cocaine was being loaded onto the courier boat.

Rule 32(c)(3)(D) provides that when a defendant alleges a factual inaccuracy in a presentence report, the district court "shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." Accord-

ingly, by accepting Robinson's characterization of the Providence Trader incident, Judge Cannella complied with Rule 32(c)(3)(D). In the absence of any violation of that rule or of statutory sentencing limits, and in view of our extremely limited scope of review of this pre-Guidelines sentence, *see United States v. Ruggiero*, 928 F.2d 1289, 1306 (2d Cir.) (collecting cases), *cert. denied,* — U.S. —, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991)), we perceive no basis to disturb the sentence imposed upon Robinson.

### Conclusion

The judgment of conviction is affirmed.