47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence GENOA, Defendant-Appellant.
 No. 93-2292.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1995.
 
 Before: RYAN and SILER, Circuit Judges; and DOWD, District Judge.*
 I. Introduction
 PER CURIAM.
 
 
 1
 This appeal presents the threshold question, triggered by the government's motion to dismiss, of what appellate rights the appellant retains because of his fugitive status for nearly 38 months following his conviction and prior to his sentence.
 
 
 2
 Lawrence Genoa, the appellant, was one of 21 defendants indicted for conspiracy to distribute cocaine. Fifteen of those defendants entered guilty pleas. The remaining six, including Genoa, went to trial. Genoa and three codefendants, George Katsakis, Jesse Kincaid and Brian McLennan, were tried together and convicted by a jury on October 17, 1989.[1] Genoa, free on a $500,000 personal bond, failed to appear for his January 31, 1990 sentencing and a warrant for his arrest was issued. Genoa's three codefendants were sentenced however, and their convictions affirmed following a consolidated appeal. United States v. Katsakis, 976 F.2d 734 (table), 1992 WL 232491 (6th Cir. Sept. 21, 1992), cert. denied, --- U.S. ----, 113 S.Ct. 1335 (1993).
 
 
 3
 On March 23, 1993 Genoa was apprehended in Denver, Colorado. He subsequently entered a guilty plea on August 25, 1993 for failing to appear in violation of 18 U.S.C. Sec. 3146. The district court sentenced Genoa to concurrent prison terms of 286 months for conspiracy to distribute cocaine and 240 months for possession with intent to distribute pursuant to the 1988 Sentencing Guidelines. The district court added a consecutive term of six months on the bond jumping charge. Genoa appealed both his conviction and sentence and the Government has moved to dismiss.
 
 
 4
 II. The Dismissal of an Appeal and the Fugitive
 
 Disentitlement Doctrine
 
 5
 The analysis required by Guideline sentencing prevents sentencing at the time of conviction where the issues of guilt are subject to jury trial. As a consequence, many convicted defendants remain free on bond pending the completion of the pre-sentence report and the imposition of the sentence. When a defendant in such a condition--convicted, but unsentenced and free on bond--fails to report for sentencing and flees, the issue arises as to what extent the fugitive-defendant, convicted but unsentenced, has lost his right to appeal his conviction.
 
 
 6
 The United States Supreme Court in Ortega-Rodriguez v. United States, --- U.S. ----, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993) has clarified the circumstances when a federal court of appeals may dismiss an appeal because the appellant is a fugitive from justice following conviction but before sentencing. In Ortega-Rodriguez the defendant fled following his conviction, but was sentenced in absentia along with several codefendants who had appeared. Id. at ----, 113 S.Ct. at 1202. Authorities apprehended defendant after 11 months and he was indicted for his failure to appear. While defendant was under indictment after his arrest, the court of appeals resolved the appeals of his two codefendants. The appeals court reversed one conviction based on insufficiency of evidence, but affirmed the other because the second defendant had made an additional post-arrest statement which was used against him. Id. at ----, 113 S.Ct. at 1202 & n. 6. "On appeal, [defendant] argued that the same insufficiency of evidence rationale underlying reversal of his codefendant's conviction should apply in his case, because precisely the same evidence was admitted against the two defendants." Id. at ----, 113 S.Ct. at 1203.
 
 
 7
 In invalidating any per se application of an appellate dismissal rule for conduct before the district court, the Ortega-Rodriguez Court was careful to note that the power of appellate courts to dismiss appeals because of an appellant's fugitive status did not rest solely on "enforceability concerns," but rested in part on a " 'disentitlement' theory." Id. at ----, 113 S.Ct. at 1203-04 (interpreting Smith v. United States, 94 U.S. 97 (1876); Bonahan v. Nebraska, 125 U.S. 692 (1887); Eisler v. United States, 338 U.S. 189 (1949) and Molinaro v. New Jersey, 396 U.S. 365, 366 (1970)). Since a convict who is recaptured before sentencing would be amenable to any judgment that a court of appeals would render, an application of the traditional "enforceability" doctrine, which ensures only that an appellate judgment would prove enforceable against the party who joined the appeal, would leave a court without a principled basis upon which to dismiss an appeal. See Ortega-Rodriguez, --- U.S. at ----, 113 S.Ct. at 1203-04 & 1206 ("dismissal of a former fugitive's appeal cannot be justified by reference to ... enforceability concerns"). Instead, the Supreme Court held that in the appropriate case defendant's fugitive status before the district court might have such a "connection" with the "substantial interests" of the appellate tribunal that the sanction of the dismissal of the appeal would be a reasonable response because in such a case defendant's misconduct before the district court " 'disentitles the defendant to call upon the resources of the Court for determination of his claims.' " Id. at ----, 113 S.Ct. at 1204, 1208 & 1209 (reiterating the rule of Molinaro, 396 U.S. at 366 and interpreting Estelle v. Dorrough, 420 U.S. 534 (1975)).
 
 
 8
 The Supreme Court explained, "some actions by a defendant, though they occur while his case is before the district court, might have an impact on the appellate process sufficient to warrant an appellate sanction." Id. at ----, 113 S.Ct. at 1208. For example, "a long escape, even if ended before sentencing and appeal, may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal;" or "misconduct at the district court level might somehow make 'meaningful appeal impossible,' or otherwise disrupt the appellate process so that an appellate sanction is reasonably imposed." Id. at ----, 113 S.Ct. at 1208-09 (citations omitted). In addition, where defendant's "flight prevent[s] the Court of Appeals from consolidating his appeal with those of his codefendants, ... [where such is] its normal practice," and where the appellate court "deems this consequence of [defendant's] flight a significant interference with the operation of its appellate process, then ... a dismissal rule could properly be applied." Id. at ----, 113 S.Ct. at 1209 (citations omitted).
 
 
 9
 Other circuits have addressed this problem. In United States v. Bravo, 10 F.3d 79 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1386 (1994), the Second Circuit held that a defendant who was a fugitive for fifteen years following his conviction was precluded from asserting any claims which could result in a new trial pursuant to the disentitlement doctrine outlined in Ortega-Rodriguez. Bravo, 10 F.3d at 84-85. The Bravo court noted that the interim dissipation of evidence would prejudice the government's ability to retry the case, and defendant's flight prevented the consolidation of his appeal with that of his codefendant. 10 F.3d at 85.
 
 
 10
 In United States v. Sudthisa-Ard, 17 F.3d 1205 (9th Cir.1994), petition for cert. filed, 63 U.S.L.W. 3092 (U.S. June 17, 1994 (No. 94-162), defendant fled following his conviction for conspiracy and the illegal importation of heroin, but was recaptured after thirteen years. The Ninth Circuit held that pursuant to the disentitlement doctrine defendant would not be permitted to appeal his conviction even though the timely appeal by his codefendant resulted in the reversal of that codefendant's conviction. The court reasoned that because defendant's thirteen-year flight prohibited the government from retrying the case because of the dissipation of evidence and because defendant's flight prohibited the consolidation of appeals requiring "unnecessary duplication of effort and expenditure of resources," a dismissal was proper. 17 F.3d at 1207.
 
 
 11
 In United States v. Rosales, 13 F.3d 1461 (11th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 634 (1994) defendant's flight caused the passage of approximately one year between his conviction and sentencing. The Eleventh Circuit held that dismissal of defendant's appeal would be proper because the lapse of time unduly burdened the government in the event that retrial was necessary and because of the resultant significant interference with the judicial process. 13 F.3d at 1463.
 
 
 12
 In United States v. Reese, 993 F.2d 254 (D.C.Cir.1993) defendant was a fugitive for five years between his conviction and his sentencing. The District of Columbia Circuit held that since defendant's flight prevented the consolidation of his appeal with that of his codefendants, he would not be permitted to take a belated appeal of his conviction because of the significant interference with the operation of the appellate process. 993 F.2d at 256. However, in United States v. Ortega-Rodriguez, 13 F.3d 1474 (11th Cir.1994), on remand from Ortega-Rodriguez v. United States, --- U.S. ----, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), the Eleventh Circuit refused to dismiss defendant's appeal where defendant challenged his conviction on mere insufficiency of evidence grounds. As retrial would be unnecessary if defendant prevailed on appeal and since a similarly situated codefendant had been acquitted based on the same insufficiency of evidence challenge, the resolution of defendant's appeal did not result in any undue burden on the government, and did not result in a significant interference with the operation of the appellate process. 13 F.3d at 1477 & n. 7.[2]
 
 
 13
 This court has already considered and decided the appeal of the three codefendants Katsakis, Kincaid and McLennan.[3] Consequently, we find that the flight of Genoa prevented this court from considering Genoa's appeal from his conviction at the time other members of this court were dealing with the consolidated appeals of the convictions of Katsakis, Kincaid and McLennan as is the normal practice. We find that a dismissal of Genoa's appeal as it relates to his conviction is appropriate as his flight constituted a significant interference with the substantial interests of the appellate process. We agree with the reasoning of Judge Ginsburg when writing for the District of Columbia Circuit as he declared:
 
 
 14
 [I]t is more efficient for one three-judge panel to consider all the issues arising out of the same record than it is for two or more three-judge panels to review the same record in order to adjudicate the issues separately. In addition, when one co-defendant's fugitivity causes the court to schedule a second oral argument, as here, the argument of some other case is necessarily delayed. Therefore, it is apparent that by precluding consolidation pursuant to our rules, the appellant's flight has indeed resulted in "a significant interference with the operation of the appellate process." Ortega-Rodriguez, --- U.S. at ----, 113 S.Ct. at 1205.
 
 
 15
 Reese, supra at 256. Genoa's appeal of his conviction is dismissed. Genoa's flight did not interfere with appellate review of his sentence, however, and so the dismissal is limited to Genoa's attack on his conviction.
 
 
 16
 We turn now to a consideration of Genoa's appeal as it relates to his sentence.
 
 
 17
 III. The Rejection of the motion for a downward departure to
 
 
 18
 equalize his sentence with that of the
 
 Government's Witness Art Abrams
 
 19
 Genoa attacks his sentence of 292 months[4] because his motion for a downward departure was denied. Genoa based his motion to depart on the fact that the government's primary witness, Art Abrams, was not prosecuted in federal court and was granted five years probation in state court.[5] Genoa argues that the district court committed error in refusing to grant the motion for a downward departure so as to equalize the sentences of Abrams and Genoa.[6]
 
 
 20
 We initially consider whether Genoa has presented an appealable issue. It is now accepted by all circuits that a district court's discretionary refusal to depart downward is not an appealable order. See U.S. v. Ortez, 902 F.2d 61, 63-64 (D.C.Cir.1990); U.S. v. Davis, 900 F.2d 1524, 1529-30 (10th Cir.), cert. denied, 498 U.S. 856 (1990); U.S. v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.), cert. denied, 498 U.S. 819 (1990); U.S. v. Morales, 898 F.2d 99, 101 (9th Cir.1990); U.S. v. Evidente, 894 F.2d 1000, 1004 (8th Cir.), cert. denied, 495 U.S. 922 (1990); U.S. v. Denardi, 892 F.2d 269, 272 (3d Cir.1989); U.S. v. Tucker, 892 F.2d 8, 10-11 (1st Cir.1989); U.S. v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989); U.S. v. Franz, 886 F.2d 973, 976-78 (7th Cir.1989); U.S. v. Colon, 884 F.2d 1550, 1552-56 (2d Cir.), cert. denied, 493 U.S. 998 (1989); U.S. v. Fossett, 881 F.2d 976, 978-79 (11th Cir.1989); U.S. v. Buenrostro, 868 F.2d 135, 139 (5th Cir.1989), cert. denied, 495 U.S. 923 (1990).
 
 
 21
 United States v. Nelson, 918 F.2d 1268 (6th Cir.1990) acknowledges that as a matter of law a district court is not foreclosed from considering a downward departure to equalize sentences.[7] We read the district court's colloquy at the time of sentencing to constitute, inferentially, a recognition of the teachings of Nelson, supra.[8] However, rather than depart downward the district expressly indicated that he would impose the minimum number of months called for by the guidelines, i.e. 292 months.
 
 
 22
 Consequently, we find that the discretionary refusal of the district court to grant a downward departure to equalize Genoa's sentence with the Abrams' state sentence is not an appealable issue.
 
 
 23
 IV. Role Enhancement Under the Sentencing Guidelines
 
 
 24
 Genoa contends as well that the district court erred in adding four levels for his role in the offense as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. Sec. 3B1.1(a). Genoa argues that the evidence against him did not justify the enhancement as his conduct was on par of that alleged of his co-defendants. As this Circuit has held, the Guidelines' definition of "participants" encompasses "those on an equal footing or superior to defendant in a criminal hierarchy as well as those below." United States v. Dean, 969 F.2d 187, 197 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1852 (1993). In calculating the number of participants involved in the criminal activity, the sentencing court may include the defendant himself. E.g., United States v. Preakos, 907 F.2d 7, 10 (1st Cir.1990). See also Dean, 969 F.2d at 197 (counting others "[i]n addition to defendant" as "relevant for purposes of the Guideline"); United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991) (court names four persons and implies the defendant as the fifth). Moreover, "[t]he district court's determination as to role in an offense is a finding that is 'heavily dependent on the facts'....," United States v. Sims, 975 F.2d 1225, 1242 (6th Cir.1992) (citation omitted), cert. denied, --- U.S. ----, 113 S.Ct. 1315 (1993); and appellate courts will "give due deference to the district court's application of the guidelines to [those] facts." 18 U.S.C. Sec. 3742(e).
 
 
 25
 Genoa's argument that Sentencing Guideline Sec. 3B1.1(a) should not have been applied to this case is without merit. "A district court's findings of fact pursuant to the guidelines are reviewed for clear error." United States v. Williams, 962 F.2d 1218, 1226 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 264 (1992) (citing 18 U.S.C. Sec. 3742, United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 500 U.S. 945 (1991)).
 
 
 26
 The presentence report recommended an addition of four levels for the defendant's role in the offense declaring:
 
 
 27
 The defendant is clearly an organizer or leader of this conspiracy involving five or more participants.
 
 
 28
 See Presentence Investigation Report, p 34.
 
 
 29
 The presentence report also contained an appendix entitled "Culpability Chart" which listed the defendant and Abrams at the top of the chart and then listed in descending order co-defendants Graj, Alvarez, D.J. Chont, Medvecky, Slutsky, Pascul, Katsakis, Washam, Scott, Blondy, Vail, Adamian, Cometto, Kincaid, Haman, Crutcher, Opalak, McClennan, Thompson, Daniewski and S. Chont.[9]
 
 
 30
 In objecting to the four level enhancement as the leader or organizer, defendants' counsel argued that if the court set aside the testimony of the unindicted co-conspirator Abrams, then the record did not reflect any greater role on the part of the defendant than any of the other co-defendants. Sentencing Tr. at 12.
 
 
 31
 The trial court responded with the declaration that "[t]he testimony would reveal in this particular matter that the four levels for his participation is appropriate. And the Court will allow it to be added." Sentencing Tr. at 13.
 
 
 32
 Although the district court did not elaborate further when it found that the role adjustment was appropriate, the presentence report clearly identified the participants in the conspiracy and labeled Genoa as the organizer. Moreover, the defendant's objection to the four level enhancement is anchored in the proposition that the court should have ignored the testimony of the unindicted co-conspirator Abrams.
 
 
 33
 On the record before us, we find no error. In this case we find that the district court was not required to cite specific facts to support its findings regarding defendants' roles in the conspiracy because it presided over the trial. United States v. Okayfor, 996 F.2d 116, 122 (6th Cir.) (citing United States v. Richardson, 949 F.2d 851, 859 (6th Cir.1991)), cert.denied, --- U.S. ----, 114 S.Ct. 238 (1993). United States v. Stubbs, 11 F.3d 632, 641 (6th Cir.1993) requires a remand where neither the sentencing judge nor the presentence report identified the participants. However, in this case we find that the presentence report more than adequately identified the participants which numbered substantially in excess of five and indicated the organizer and leadership role of the defendant.
 
 V. Conclusion
 
 34
 The appeal of appellant Lawrence Genoa of his conviction is DISMISSED. The sentence imposed by the district court is AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The district court severed the Government's trial of the remaining two defendants, one of whom, Nicholas Medvecky, was tried and convicted on September 11, 1990. Medvecky appealed his conviction and sentence which were affirmed in a separate unpublished opinion. United States v. Medvecky, 985 F.2d 562 (table), 1993 WL 15133 (6th Cir. Jan. 22), cert. denied, --- U.S. ----, 114 S.Ct. 210 (1993)
 
 
 [2]
 Compare also Friko Corp. v. Commissioner, 26 F.3d 1139, 1143 (D.C.Cir.1994) (a court's application of the fugitive disentitlement doctrine to dismiss an appeal is a discretionary action imposed by virtue of a particular court's exercise of its inherent authority); Branch v. Turner, 37 F.3d 371 (8th Cir.1994) (discussing the constitutional validity of a state court application of Missouri's fugitive dismissal rule to a three-day escape), petition for cert. filed, 63 U.S.L.W. 3423 (Nov. 16, 1994) (No. 94-898)
 
 
 [3]
 United States v. Katsakis, supra
 
 
 [4]
 The district court determined that the amount of cocaine attributable to the defendant was between 15 and 50 kilograms which called for a Base Offense Level of 34. Two additional levels were added for obstruction of justice and four additional levels for the defendant's role in the offense. The Sentencing Range was thus 292 to 365 months. The defendant was also convicted on the bond jumping charge. A consecutive sentence was required. The court imposed a six month sentence. Nonetheless, the court's sentence, including the bond jumping charge was 292 months. Consequently, and possibly inadvertently, the trial court in fact departed downward six months as to the conviction for conspiracy to distribute cocaine. However, the government has not challenged the sentence
 
 
 [5]
 The government's sentencing memorandum contains the following declaration:
 The nature and consequences of Abrams' cooperation was extraordinary. He underwent extensive debriefing. He provided pro-active assistance by contacting many of his associates under the supervision of investigating agents. Among other things, he actively participated in an undercover reverse operation. Abrams testified before a federal grand jury. He testified at length in two federal trials. He also testified in several state court proceedings. For his cooperation he pled guilty to a state charge and received a sentence of probation. Because he violated the terms of his probation, it was revoked and he ultimately received a term of imprisonment in the Michigan Department of Corrections.
 J.A. at 103.
 
 
 [6]
 Equalization departures to harmonize sentences of codefendants are not generally favored in this Circuit. United States v. Parker, 912 F.2d 156, 157 (6th Cir.1990); United States v. Gessa, 971 F.2d 1257, 1267 (6th Cir.1992) (en banc ); Gessa, 971 F.2d at 1282-83 (Krupansky, J., concurring in part and dissenting in part). See also United States v. LaSalle, 948 F.2d 215, 218 (6th Cir.1991) (reduction in sentence simply to eliminate a disparity in one individual case without considering the interests of nationwide uniformity is unreasonable); United States v. Nelson, 918 F.2d 1268, 1275 (6th Cir.1990) (downward departure to equalize defendant's sentence with that of his co-conspirators was unreasonable, although not prohibited as a matter of law, where defendant, unlike his co-conspirators, was not entitled to any credit for substantial assistance)
 
 
 [7]
 However, in Nelson, the Circuit Court determined that the magnitude of the downward departures for the purpose of equalization were unreasonable. The sentences were reversed and the case was remanded for resentencing
 
 
 [8]
 See Sentencing Tr. at 30-40
 
 
 [9]
 The above-named co-defendants received the sentences as indicated:
 Graj (12 years), Alvarez (10 years), D.J. Chont (6 months), Medvecky (293 months), Slutsky (6.5 years), Pascul (6 years), Katsakis (108 months), Washam (90 months), Scott (105 months), Blondy (8 years), Vail (8 years), Adamian (12 years), Cometto (6 years), Kincaid (48 months plus 6 months for jumping bond), Haman (7 years), Crutcher (5 years), Opalak (5 years), McClennan (121 months), Thompson (5 years), Daniewski (9 months) and S. Chont (6 months).