UNITED STATES of America,
Appellee,

v.

Michael MORGAN, Defendant–
Appellant.

Docket No. 00–1627.

United States Court of Appeals,
Second Circuit.

Argued June 4, 2001.

Decided June 21, 2001.

Roger J. Schwarz, New York, NY, for Defendant–Appellant.

Christopher J. Clark, Assistant United States Attorney, Southern District of New York (Mary Jo White, United States Attorney, David Raymond Lewis, Assistant United States Attorney, of counsel), New York, NY, for Appellee.

Before CABRANES, STRAUB, and SACK, Circuit Judges.

PER CURIAM:

Michael Morgan appeals from a judgment of conviction entered on September 20, 2000 by the United States District Court for the Southern District of New York (Michael B. Mukasey, *Chief Judge* ), following Morgan's plea of guilty to one count of making, uttering, or possessing counterfeit money orders in violation of 18 U.S.C. § 513(a).[1] Morgan challenges the District Court's denial of his January 14, 2000 motion to withdraw his plea of guilty. The District Court denied the motion on the basis of, *inter alia,* the "fugitive disentitlement doctrine."[2] On appeal, Morgan argues that the District Court should not have accepted his plea because it was not knowing and voluntary. Morgan, for the first time on appeal, also raises two new claims. First, he argues that his plea was not supported by a sufficient factual basis, as required by Federal Rule of Criminal Procedure 11(f).[3] Second, he argues that he received ineffective assistance of counsel.

For the reasons set forth below: (1) we hold that the District Court did not abuse its discretion in applying the fugitive disentitlement doctrine as a basis for denying Morgan's motion to withdraw his plea of guilty; and (2) we apply the doctrine on appeal and decline to consider the merits of Morgan's remaining claims.

## I.

Morgan was arrested on August 23, 1993, and charged with selling approxi-

---

**1.** Section 513(a) provides:

Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

**2.** The "fugitive disentitlement doctrine" gives a court "discretion to refuse to rule on the merits of a defendant's postconviction claims of trial error when the defendant has fled from justice." *United States v. Bravo,* 10 F.3d 79, 83 (2d Cir.1993).

**3.** Rule 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

mately \$88,000 [4] in counterfeit money orders to an undercover agent of the Federal Bureau of Investigation ("FBI"). Following his arrest, Morgan confessed to participating in a scheme to sell the money orders and began cooperating with the FBI. On November 12, 1993, Morgan pleaded guilty pursuant to a cooperation agreement. The cooperation arrangement was still in effect in September 1994, when Morgan was rearrested after he was recorded warning another FBI cooperating witness and others that they were the targets of an FBI investigation, and giving them advice on how to avoid being apprehended.

Morgan fled before sentencing, which was scheduled for January 20, 1994. In 1997, the government learned that Morgan was living in Finland, and on November 20, 1997, it requested that the Finnish authorities arrest Morgan and extradite him to the United States. However, it turned out that as of December 5, 1997, Morgan had been sentenced to between six months and three years in prison for narcotics offenses in Finland. Morgan was paroled by Finnish authorities in August 1999 and turned over to the United States.

On January 14, 2000, now represented by new counsel, Morgan moved to withdraw his plea of guilty on the grounds that it was not made voluntarily because his previous attorney had coerced him into pleading. Morgan did not argue in the District Court, as he now does on appeal, that there was an insufficient factual basis for his plea and that his counsel was ineffective in not recognizing this alleged defect.

After a hearing on February 7, 2000, the District Court denied Morgan's motion on May 30, 2000. On September 12, 2000, the Court sentenced Morgan principally to 18 months' imprisonment and three years' supervised release.[5] This timely appeal followed.

On appeal, Morgan argues that the fugitive disentitlement doctrine should not apply in this case; that there was an insufficient factual basis for his plea; and that he received ineffective assistance of counsel.

## II.

■ Under the "fugitive disentitlement doctrine," a court has "discretion to refuse to rule on the merits of a defendant's postconviction claims of trial error when the defendant has fled from justice." *United States v. Bravo,* 10 F.3d 79, 83 (2d Cir.1993) (affirming a district court's application of the doctrine and applying it on appeal to claims of trial error); *see also Empire Blue Cross & Blue Shield v. Finkelstein,* 111 F.3d 278, 280–82 (2d Cir.1997) (applying the doctrine on appeal in a civil case). The doctrine serves four rationales: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *Finkelstein,* 111 F.3d at 280.

■ We review a district court's application of the fugitive disentitlement doctrine for abuse of discretion. *See Bravo,* 10 F.3d at 85. Here, the District Court did not abuse its discretion in applying the fugitive disentitlement doctrine as a basis for denying Morgan's motion to withdraw

---

4. At the plea colloquy, the government stated that it could prove Morgan had sold \$97,000 worth of counterfeit securities.

5. Morgan has completed the custodial portion of his sentence and is currently on supervised release.

his plea. The District Court's application of the doctrine served the second, third, and fourth rationales cited in *Finkelstein.*[6] Morgan disappeared and could not be returned to custody for six years, thereby flouting the judicial process and interfering with the efficient operation of the courts. In addition, as the Court noted in its oral decision, Morgan's flight would result in prejudice to the government if his case were now to go to trial because the government no longer knows the whereabouts of the cooperating witness who would have testified against Morgan. Accordingly, we affirm the District Court's judgment on the ground that it did not abuse its discretion in applying the fugitive disentitlement doctrine and in declining to hear the merits of Morgan's post-conviction claims.

■ Moreover, we apply the doctrine ourselves and decline to consider the merits of Morgan's remaining claims—namely, (1) his challenge to the factual basis of his plea, which he raises for the first time on appeal, and (2) his claim of ineffective assistance of counsel.

■ An appellate court may apply the fugitive disentitlement doctrine where a sufficient nexus exists between the defendant's fugitive status and the appellate proceedings. *See Ortega–Rodriguez v. United States,* 507 U.S. 234, 249, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). The most obvious example of such a nexus is where a defendant becomes a fugitive *after* filing a notice of appeal and remains a fugitive while his appeal is pending. *See id.* at 244, 113 S.Ct. 1199. However, an appellate court may apply the doctrine even where a defendant has been recaptured prior to an appeal, as long as the required nexus is present. *See, e.g., Bravo,* 10 F.3d at 84.

In *Bravo,* we recognized two bases, both of which were enunciated by the Supreme Court in *Ortega–Rodriguez,* for an appellate court to apply the fugitive disentitlement doctrine in cases in which the defendant has been recaptured prior to his or her appeal: (1) where a fugitive's escape so delays the onset of appellate proceedings that the government would be prejudiced in locating witnesses if a trial were to take place after a successful appeal; and (2) where one of several co-defendants absconds, requiring multiple appeals if the defendant is allowed to appeal after his recapture. *See id.* (citing *Ortega–Rodriguez,* 507 U.S. at 249–50, 113 S.Ct. 1199).

In the instant case, Morgan was recaptured prior to appeal and after a six-year absence. Nevertheless, the required nexus between his flight and these appellate proceedings exists. Specifically, were we to identify an error on the grounds that there was an insufficient factual basis for Morgan's plea or find that his counsel was ineffective, thereby granting Morgan an opportunity to replead, and were Morgan to choose to plead not guilty and elect to proceed to trial, the government would be significantly prejudiced because, as explained above, the government's cooperating witness cannot now be located.

■ Morgan argues that the doctrine *cannot* apply to his Rule 11(f) claim that the plea lacked a sufficient factual basis because the District Court's obligation to ensure that a sufficient factual basis for a plea exists continues until entry of judgment. *See United States v. Smith,* 160 F.3d 117, 121 (2d Cir.1998). While Morgan is correct that the District Court had an obligation until the entry of judgment to ensure that a factual basis existed for a plea, this argument does not preclude *us*

---

6. The first factor—ensuring the enforceability of the judgment—is not relevant in this case

because Morgan was back in custody when he brought his postconviction claims.

from applying the fugitive disentitlement doctrine.[7] Subject to the rationales set forth above and to the existence of a sufficient nexus to these appellate proceedings, Morgan's flight disentitles him to call upon the resources of this court for determination of his claims. *See Bravo,* 10 F.3d at 83 (internal quotation marks omitted). Accordingly, we apply the fugitive disentitlement doctrine here and decline to reach the merits of Morgan's claims.

### III.

In sum: (1) we hold that the District Court did not abuse its discretion in applying the fugitive disentitlement doctrine as a basis for denying appellant's motion to withdraw his plea of guilty; and (2) we apply the doctrine on appeal ourselves and decline to consider the merits of appellant's remaining claims.

The judgment of the District Court is **AFFIRMED.**

7. Moreover, the argument does not require reversal of the District Court's judgment in this case because Morgan did not raise this claim before the District Court applied the doctrine to his post-conviction motion.