**UNITED STATES of America, Cross–Movant–Appellee,**

v.

**Sherif AWADALLA, Movant– Defendant–Appellant.**

**Docket No. 03–1378.**

United States Court of Appeals, Second Circuit.

Submitted: Oct. 21, 2003.

Decided: Feb. 6, 2004.

---

Barry E. Schulman, Brooklyn, NY, for Movant–Defendant–Appellant.

Susan Corkery, Assistant United States Attorney (Peter A. Norling, Assistant United States Attorney, of counsel; Roslynn Mauskopf, United States Attorney, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Cross–Movant–Appellee.

Before: WINTER, CABRANES, and SACK, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Counsel for Sherif Awadalla, a convicted felon who absconded after filing a notice of appeal in this Court, moves for a stay of Awadalla's appeal or, alternatively, for dismissal of his appeal without prejudice to renewal when he surrenders. The Government cross-moves to dismiss Awadalla's appeal with prejudice. For the reasons set forth below, the Government's motion is granted, and the appeal is dismissed with prejudice.

## BACKGROUND

On June 6, 2003, Awadalla was convicted, following a guilty plea, in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*) of one count of conspiracy to commit credit card fraud in violation of 18 U.S.C. § 1029. He was sentenced to a

prison term of 14 months and a three-year term of supervised release, and was ordered to pay restitution in the amount of $101,293.48 along with a $100 special assessment. On June 16, 2003, Awadalla filed a notice of appeal in this Court.

The District Court ordered Awadalla to surrender voluntarily on August 12, 2003. By letter dated August 8, 2003, Awadalla's counsel requested that the surrender date be postponed until August 15, 2003. The District Court granted the extension. Awadalla failed to surrender on that date, or thereafter.

Awadalla's counsel now moves for a stay of Awadalla's appeal or, alternatively, for dismissal of the appeal without prejudice to renewal when Awadalla returns to custody. The Government cross-moves to dismiss Awadalla's appeal with prejudice.

## DISCUSSION

The two issues presented are (1) whether we should dismiss Awadalla's appeal and (2) if so, whether the appeal should be dismissed with prejudice.

### A. Dismissal of the Appeal

#### 1. The Fugitive Disentitlement Doctrine

The Supreme Court has long held that, in criminal cases, appellate courts have the authority to "dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega–Rodriguez v. United States*, 507 U.S. 234, 239, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993); *Eisler v. United States*, 338 U.S. 189, 190, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949) (removing case from docket because petitioner had fled the country); *Smith v. United States*, 94 U.S. 97, 97, 24 L.Ed. 32 (1876) (removing case from docket because petitioner had escaped from custody); *see also Degen v. United States*, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) ("We have sustained, to be sure, the authority of an appellate court to dismiss an appeal or writ in a criminal matter when the party seeking relief becomes a fugitive.").[1]

In determining whether to dismiss a criminal appeal pursuant to the fugitive disentitlement doctrine, we look to four grounds we have identified for "disentitling" fugitives: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *Empire Blue Cross & Blue Shield*

---

1. Appellate courts likewise have the authority to dismiss a criminal appeal under the fugitive disentitlement doctrine where an appellant is not a fugitive during the pendency of his appeal but there is "some connection between the defendant's [prior] fugitive status and his appeal." *Ortega–Rodriguez v. United States*, 507 U.S. 234, 249, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). Such a nexus exists, for example, when "a long escape, even if ended before sentencing and appeal" so delays "the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal." *Id.* Similarly, dismissal of a fugitive's *civil* appeal is appropriate when there is a sufficient nexus between the appellant's absence from custody and his appeal. *See Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 282 (2d Cir.1997) (defendants' appeal from a civil judgment dismissed because defendants' fugitive status rendered judgment against defendant unenforceable).

On the other hand, dismissal of a criminal appeal is not proper on the sole ground that a defendant had been a fugitive during the proceedings before the district court. *Ortega–Rodriguez*, 507 U.S. at 250, 113 S.Ct. 1199. By the same token, dismissal of a civil appeal is not proper if the defendant's fugitive status has no substantial bearing on his civil appeal. *Degen v. United States*, 517 U.S. 820, 826–27, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996).

*v. Finkelstein,* 111 F.3d 278, 280 (2d Cir. 1997) (drawing factors from *Bar–Levy v. United States Dep't of Justice,* 990 F.2d 33, 35 (2d Cir.1993)). Thus, in addition to protecting litigants and ensuring that adverse judgments can be enforced, the fugitive disentitlement doctrine is intended to sanction fugitives for affronting the dignity of the court and to deter other appellants from absconding.

In *Degen,* the Supreme Court indicated that the dignity and deterrence grounds for disentitling fugitives do not support dismissal of a *civil* appeal based on an appellant's fugitive status in a separate criminal case. The Court held that "[t]he need to redress the indignity visited upon the District Court by [the appellant's] absence from the criminal proceeding, and the need to deter flight from criminal prosecution by [the defendant] and others" are not sufficiently served by disentitlement of a criminal defendant in a related civil case. *Degen,* 517 U.S. at 828, 116 S.Ct. 1777. The Court explained that "[t]here would be a measure of rough justice in saying [that a defendant] must take the bitter with the sweet, and participate in the [legal process] either for all purposes or none. But the justice would be too rough." *Id.* at 829, 116 S.Ct. 1777; *see also SEC v. Berger,* 322 F.3d 187, 192 (2d Cir.2003) (noting that "[t]he Supreme Court [in *Degen* ] called into question the validity of the second and third . . . justifications" for fugitive disentitlement). *Degen* thus supports the proposition that, *in civil cases,* "the most persuasive justifications for disentitlement are now (1) the inability to enforce a decision rendered by the appellate court, and (2) the need to avoid prejudice to the other party resulting from the defendant's fugitive status." *Id.* at 192.

The *Degen* Court's rationale for discounting dignity and deterrence as relevant factors—namely, that a criminal defendant should not be sanctioned by one court for his affront to another court—has no application to criminal appeals. Unlike the fugitives in *Degen* and *Berger,* who sought to prosecute civil appeals despite their fugitive status, a fugitive who absconds in the course of an ongoing criminal appeal flouts the authority of the court from which he seeks relief. By imposing the sanction of disentitlement, that court can both protect the dignity of its proceedings and deter similarly situated parties from absconding. *See Ortega–Rodriguez,* 507 U.S. at 246–47, 113 S.Ct. 1199 (approving dismissal "as a sanction when a defendant's flight operates as an affront to the dignity of the court's proceedings" and noting that "[o]nce jurisdiction has vested in the appellate court, . . . dismissal may be an appropriate sanction by which to deter" other criminal appellants from fleeing).

### 2. Applied to this Case

■  Because Awadalla absconded after challenging his judgment of conviction in this Court, there is no doubt that we have the authority to dismiss his appeal. Moreover, three of the factors to be considered in determining whether a fugitive should be disentitled weigh in favor of dismissal. First, because Awadalla's whereabouts are unknown, we cannot assure that any decision rendered against him will be enforced. *See Finkelstein,* 111 F.3d at 282 ("We see no reason to 'entertain the cause of one who will respond to a judgment only if it is favorable.' ") (quoting *Ali v. Sims,* 788 F.2d 954, 959 (3d Cir.1986)). Second, by absconding after he initiated his appeal in this Court, Awadalla has flouted the judicial process. *See Ortega–Rodriguez,* 507 U.S. at 245–46, 113 S.Ct. 1199. Finally, dismissing Awadalla's appeal would serve to preserve this Court's resources and deter similarly-situated appellants from flee-

ing from justice. *See id.* at 247, 113 S.Ct. 1199.[2]

Each of these factors is an independently sufficient basis on which to dismiss Awadalla's appeal. Therefore, the motion by Awadalla's counsel to stay the appeal is denied. Instead, we exercise our discretion to dismiss Awadalla's appeal under the fugitive disentitlement doctrine.

### B. Dismissal with Prejudice

■ The remaining question is whether to dismiss the instant appeal with prejudice, as requested by the Government, or without prejudice to renewal, as requested by counsel to Awadalla. Considering the number of cases in which federal appellate courts, including both the Supreme Court and our Court, have dismissed appeals brought by fugitives, there is a surprising shortage of guidance on this issue. Accordingly, we take this opportunity to review the relevant case law, and to explain why we have concluded that Awadalla's appeal should be dismissed with prejudice.

In *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), the Supreme Court initially agreed to hear an appeal by a criminal defendant convicted in New Jersey of abortion and conspiracy to commit abortion. However, upon learning that the defendant, who was free on bail, had failed to surrender himself to state authorities, the Court declined to adjudicate the appeal, and dismissed the appeal without delay. *See id.* at 366, 90 S.Ct. 498 ("The dismissal need not await the end of the Term or the expiration of a fixed period of time, but should take place at this time."). In doing so, the Supreme Court followed the guidance of *Eisler v. United States*, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949), in which the Court had immediately dismissed an appeal upon learning that the appellant had fled the United States and resisted extradition.[3]

*Molinaro* has uniformly been interpreted to authorize immediate dismissal *with prejudice* of a fugitive's appeal. *See, e.g., United States v. $129,374 in United States Currency*, 769 F.2d 583, 588 (9th Cir.1985) ("[I]n *Molinaro*, the Court did not hold the appeal in abeyance; it dismissed the appeal entirely"); *United States v. Amado*, 754 F.2d 31, 32 (1st Cir.1985) (relying on *Molinaro* for the proposition that "[t]here can be no doubt of our authority to dismiss the [fugitive's] appeal with prejudice"). Despite this uniform interpretation, *Molinaro* cannot be interpreted to *compel* immediate dismissal with prejudice of fugitives' appeals, because the Supreme Court itself has sometimes chosen a different approach. As early as *Smith v. United States*, 94 U.S. 97, 24 L.Ed. 32 (1876), for example, the Court stated that a fugitive's appeal would be dismissed "unless the plaintiff in error submit himself to the jurisdiction of the court below on or before

---

**2.** The only relevant factor that does not weigh in favor of dismissal of Awadalla's appeal is "the need to avoid prejudice to the other party resulting from the defendant's fugitive status." *SEC v. Berger*, 322 F.3d 187, 192 (2d Cir.2003). In these particular circumstances, that factor does not weigh in favor of dismissal because Awadalla has already pleaded guilty to the crime of which he was convicted. Thus, unless Awadalla's plea was defective in some way, the Government has already completed its case against Awadalla and will not be prejudiced by Awadalla's absence from custody. *Id.* (explaining that "Berger's absence has not prejudiced the SEC [because] ... Berger has already admitted to all the facts necessary to prove the SEC's case").

**3.** Although the *Molinaro* and *Eisler* Courts did not specifically use the words "with prejudice," by dismissing the appeals before them without giving the appellants an opportunity to return to custody and renew their appeals, the Courts effectively dismissed the appeals with prejudice. Thus, in this context, "immediate dismissal" and dismissal "without delay" are interchangeable with dismissal "with prejudice."

the first day of our next term," *id.* at 98. Similarly, in *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887), the Court ordered a fugitive's appeal dismissed "unless the plaintiff in error is brought or comes within the jurisdiction and under the control of the court below on or before the last day of this term[,]" *id.* at 692, 8 S.Ct. 1390. Neither of these decisions has been disclaimed by the Supreme Court.

Our Court also has exercised its discretion to dismiss fugitives' appeals both with and without prejudice to renewal. In one recent case, we exercised our discretion to dismiss a civil appeal immediately—that is, with prejudice, *see* note 3, *ante*—where the appellee's case was adversely affected by the appellant's fugitive status. *See Finkelstein,* 111 F.3d at 282. In other cases, however, we have given fugitives a short grace period in which to return to custody before their appeals would finally be removed from the docket. *See United States v. Sotomayor,* 592 F.2d 1219, 1220 n. 1 (2d Cir.1979) (dismissing appeal with prejudice because the fugitive had not returned to custody within 30 days of an order dismissing his appeal without prejudice to renewal upon return to custody within 30 days); *United States v. Sperling,* 506 F.2d 1323, 1345, n. 33 (2d Cir.1974) (ordering dismissal following 30–day grace period)[4]; *Stern v. United States,* 249 F.2d 720, 722 (2d Cir.1957) (ordering dismissal of civil appeal "unless within 60 days from the date of this opinion the appellants shall deposit the amount of their fines and costs in the registry of the district court or give bond for the payment thereof").

■ Based on this collection of cases both from the Supreme Court and from

our Court, it is clear that we have discretion to dismiss Awadalla's appeal with or without prejudice to renewal. Upon due consideration, we exercise our discretion to dismiss Awadalla's appeal *with* prejudice. We choose that course of action because we believe that dismissal with prejudice is consistent both with the more recent decisions of the Supreme Court and with the underlying purposes of the fugitive disentitlement doctrine.

*Eisler,* which involved an appeal by a convict who had escaped the country and successfully resisted extradition, is the only decision from the Supreme Court (or our Court) that has examined the rationale for dismissing a fugitive's appeal with prejudice in any detail. In that case, Justice Frankfurter, writing for the Court, explained the decision to dismiss Eisler's appeal with prejudice as follows:

> This case has nothing in common with instances cited as precedent for leaving it off the docket until a direction to the contrary shall issue. *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32; *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854. In those cases convicts had broken jail while their cases were pending in this Court and remained at large. As a matter of practical good sense, apparently upon informal suggestion, the Court suspended disposition of the cases until it should receive word from the sheriff who reported the escape that a recapture had been accomplished. Such jailbreaks, indeed, as often as not imply a merely temporary separation from confinement. But whatever may be thought of such a light-reined way of dealing with a jail-

4. Although we did not give any specific reason in *Sperling* for our decision to give the fugitive 30 days to return to custody, it is noteworthy that, in the same opinion, we reversed the fugitive's conviction on one of the counts in the indictment, although we affirmed another of his convictions. *See United States v. Sperling,* 506 F.2d 1323, 1345 (2d Cir.1974) (reversing Nelson Garcia's conviction on Count One).

break from our local jails, the situation presented by this case is totally different. Here we have the most formal kind of resistance to the jurisdiction of this Court.

*Eisler,* 338 U.S. at 193, 69 S.Ct. 1453. Thus, although the Court did not purport to set forth any bright line rule as to when an appeal should be dismissed with prejudice, its opinion suggests that, in contrast to a mere escapee from a local jail, a felon who flees the country and resists extradition should be sanctioned immediately and permanently for his "formal" resistance to the judicial process.

In *Molinaro,* in which the Supreme Court dismissed with prejudice the appeal of a felon who failed to surrender to state authorities after his bail expired, the Court did not rely on the distinction drawn in *Eisler* between formal resistance to an appellate court's jurisdiction and mere jailbreaks. Instead, the Court simply stated: "While [the defendant's] escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro,* 396 U.S. at 366, 90 S.Ct. 498.

The *Molinaro* Court, which cited *Eisler,* may have believed that a convicted felon who jumps bail falls in the same category as a defendant who successfully resists extradition. Alternatively, the Court may have believed that *any* fugitive's appeal should be dismissed with prejudice. Under either scenario, *Molinaro*—the most recent decision of the Supreme Court that is directly on point—suggests that a defendant who jumps bail is no longer entitled to draw on the resources of an appellate court, and, therefore, should not be accorded additional time to return to custody before his appeal is dismissed.

The practice endorsed in *Molinaro*— namely, immediate dismissal of a bail jumper's appeal *with prejudice*—is consistent with the principles underlying the fugitive disentitlement doctrine. It is plain that, if the only rationale for the doctrine were assuring the enforceability of a decision rendered against the fugitive, there would be no significant harm in giving a fugitive a grace period in which to return to custody. Likewise, to the extent that the doctrine is intended to prevent continuing prejudice to the government caused by a defendant's absence (as opposed to past, irrevocable prejudice), it might be prudent in some circumstances to allow a defendant to renew his appeal upon surrendering to the jurisdiction of the court.[5] However, where the court hearing an appeal is the same court from which the fugitive seeks relief from his conviction,

---

5. We do not in any way suggest that delaying dismissal is required or even preferable in civil cases, where, pursuant to *Degen,* the dignity and deterrence rationales for the fugitive disentitlement doctrine do not apply with equal force. In *Finkelstein,* for example, we dismissed a fugitive's civil appeal with prejudice without finding that the appellee had been irrevocably harmed by the defendant's absence. *See Finkelstein,* 111 F.3d at 282 (dismissing appeal where appellee "has been prejudiced—*perhaps* irrevocably—by the defendants' absence" (emphasis added)). Similarly, in *Sarlund v. Anderson,* 205 F.3d 973 (7th Cir.2000), the Seventh Circuit stated that, where a plaintiff's fugitive status "creat[es] a situation severely prejudicial to his adversaries," the district judge should invoke the fugitive disentitlement doctrine "and dismiss[ ] the suit *without further ado,*" *id.* at 975 (emphasis added). In sum, it is undoubtedly within the discretion of federal courts to dismiss civil actions or appeals with prejudice under the fugitive disentitlement doctrine where there is a sufficient nexus between the appellant's absence from custody and the civil case. We simply point out that the justification for dismissing with prejudice is even stronger in criminal cases, where the appellant has flouted the authority of the court from which he seeks relief from his term of confinement.

the fugitive disentitlement doctrine also serves two additional purposes: "imposing a penalty for flouting the judicial process" and "discouraging flights from justice and promoting the efficient operation of the courts." *Finkelstein,* 111 F.3d at 280.

Citing these two rationales for disentitlement—dignity and deterrence—we concluded in *United States v. Morgan,* 254 F.3d 424 (2d Cir.2001), that a district court did not err when it invoked the fugitive disentitlement doctrine to deny a motion *even after the defendant had returned to custody.*[6] Like the defendant in *Morgan,* Awadalla has affronted the dignity of the court from which he seeks relief. Accordingly, consistent with the Supreme Court's decisions in *Eisler* and *Molinaro,* we dismiss his appeal with prejudice. In our view, any other course of action would dilute the sanction imposed for flouting the judicial process and reduce the deterrent effect of that sanction.

## CONCLUSION

For the reasons stated above, the motion by Awadalla's counsel to stay the instant appeal or, alternatively, to dismiss the appeal without prejudice to renewal is denied. The Government's motion to dismiss the appeal with prejudice is granted. We direct the Clerk of the Court to enter an order dismissing the appeal.

---

**6.** The application of the doctrine in that case was also justified because "Morgan's flight would result in prejudice to the government if his case were now to go to trial because the government no longer knows the whereabouts of the cooperating witness who would have testified against Morgan." *United States v. Morgan,* 254 F.3d 424, 427 (2d Cir.2001).

Notably, however, instead of affirming the district court's decision solely on the ground that the government had suffered past, irrevocable prejudice, we specifically noted that invocation of the doctrine was appropriate because Morgan "flout[ed] the judicial process and interfer[ed] with the efficient operation of the courts." *Id.*