LOHIER, Circuit Judge, dissenting:
I would affirm Judge Ramos's decision. Klein's action under Section 16(b) of the Securities Exchange Act became moot and the District Court lost jurisdiction the moment she ceased to have any financial stake in Qlik. In the alternative, Judge Ramos was right to dismiss the action under Rule 17(a)(3) when Klein failed to show that the untimeliness of her motion to substitute Qlik as the plaintiff resulted from an "honest mistake." I address each of these independent reasons for affirmance in turn.
1. Mootness
The majority's take on justiciability and mootness is laudable as a matter of policy but wrong as a matter of law. In United States v. Sanchez-Gomez, a decision that issued while this appeal was pending, the Supreme Court reminded us that a "case that becomes moot at any point during the proceedings is no longer a Case or Controversy for purposes of Article III, and is outside the jurisdiction of the federal courts." --- U.S. ----, 138 S.Ct. 1532, 1537, 200 L.Ed.2d 792 (2018) (quotation marks omitted). To avoid dismissal on mootness grounds, the Court explained, "a plaintiff must show a personal stake in the outcome of the action," thereby ensuring that an "actual and concrete dispute[ ]" exists "at all stages of review, not merely at the time the complaint is filed." Id. (quotation marks omitted). The Court recognized that some of its prior decisions involving class actions applied a less rigid mootness rule. See id. at 1537-40. But the Court confined those decisions exclusively to class actions, explaining that reliance on a more relaxed rule of mootness in other contexts would be "misplaced." Id. at 1537. The Court's reaffirmation of Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013), confirms this reading of Sanchez-Gomez. In Genesis Healthcare, the Court declined to extend its more flexible mootness doctrine for class actions to "collective actions" brought under the Fair Labor Standards Act (FLSA), even though a collective action is "a procedural device bearing many features similar to a class action."
*229 Sanchez-Gomez, 138 S.Ct. at 1539-40 (citing Genesis Healthcare, 569 U.S. at 73-75, 133 S.Ct. 1523 ).
With Sanchez-Gomez in mind, let me turn to this appeal. Klein, the only plaintiff in the case, indisputably had a personal stake in the action before Qlik's cash-out merger transaction closed and her shares were purchased. Had Klein received stock in a parent company rather than cash after the merger, she would have preserved her personal stake in this litigation. See Gollust v. Mendell, 501 U.S. 115, 126-28, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991). But the "intervening circumstance" of Qlik's cash-out merger in this case stripped Klein of any financial position in the company and therefore any stake in the outcome of this suit. See Genesis Healthcare, 569 U.S. at 72, 133 S.Ct. 1523. At that point, "the action [could] no longer proceed," and the District Court, divested of a concrete dispute, was obligated to dismiss it as moot. See id.
Viewing Sanchez-Gomez as a barrier, the majority stretches to label Klein a "representative plaintiff," analogizes her suit under Section 16(b) of the Securities Exchange Act to either class action litigation or shareholder derivative suits, and insists that, under the looser mootness doctrine applicable to class actions, the District Court "maintain[ed] its jurisdiction at least long enough to determine whether a substitution could avoid mootness." Majority Op. at 225. But if Sanchez-Gomez forecloses an analogy between class actions and FLSA collective actions, then the analogy that the majority attempts to draw between a class action and a Section 16(b) action (where a single shareholder pursues a claim on behalf of a single issuer rather than a collective) is surely even further afield. Nor is the majority's analogy to derivative suits under Rule 23.1 of the Federal Rules of Civil Procedure an apt one. To the contrary, we have explicitly held that "[t]he standing requirements for shareholder derivative suits are not applicable to a § 16(b) plaintiff." Mendell ex rel. Viacom, Inc. v. Gollust, 909 F.2d 724, 728 (2d Cir. 1990) (emphasis added), aff'd on other grounds sub nom. Gollust v. Mendell, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) ; see also 9 LOUIS LOSS, JOEL SELIGMAN & TROY PAREDES, SECURITIES REGULATION 384 (5th ed. 2018) (" Rule 23.1... has been held inapplicable to actions under § 16(b) in view of the policy and language of that Section.").
I would therefore affirm the District Court's dismissal of this case for lack of jurisdiction.
2. Rule 17(a)(3)
Even if the District Court retained jurisdiction after the merger, it correctly held, in the alternative, that Klein's motion to substitute Qlik under Rule 17(a)(3)"would fail." Klein v. Cadian Capital Mgmt., LP, 15 Civ. 8140 (ER), 2017 WL 4129639, at *10 n.13 (S.D.N.Y. Sept. 15, 2017).
According to the majority, the District Court was wrong to hold that Rule 17(a)(3) permits substitution only if there has been an "honest mistake" in selecting the proper plaintiff and that Qlik's decision to refuse Klein's demand was not an "honest mistake." Majority Op. at 226. But the majority simply ignores our precedent requiring a movant under Rule 17(a)(3) to show that the failure to timely select the proper plaintiff reflected an honest mistake. See United States v. Zedner, 555 F.3d 68, 82 n.3 (2d Cir. 2008) (Pooler, J., dissenting) ("[W]e are bound by the decisions of prior panels until such time as they are overruled by an en banc panel of our Court or by the Supreme Court." (quotation marks omitted) ).
In Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.À.R.L., for *230 example, we explained that Rule 17(a)(3)"codifies the modern judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff." 790 F.3d 411, 421 (2d Cir. 2015) (emphasis added) (quotation marks omitted). "We have ordinarily allowed amendments under Rule 17," we stated, "only when a mistake has been made as to the person entitled to bring suit." Id. at 424 (emphasis added) (quotation marks omitted). The majority casts our language in Cortlandt as mere "background." Majority Op. at 227-28. Maybe. However you wish to describe it, that language became binding precedent less than a year later, in DeKalb County Pension Fund v. Transocean Ltd., 817 F.3d 393 (2d Cir. 2016). There we confirmed that Rule 17(a)(3)" 'was added ... to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought' and 'codified the modern judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff.' " Id. at 412 (emphasis in original) (quoting Cortlandt, 790 F.3d at 421 ). We then applied the "honest mistake" requirement, holding that DeKalb, which had belatedly moved to be appointed lead plaintiff in a class action, had no recourse under Rule 17(a)(3) because it had not "suggested that whatever 'mistake' may have led to its tardy appearance was 'understandable' or 'honest,' nor pointed to a 'semblance of any reasonable basis' therefor." Id. (quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997) ). We noted that no injustice arose from applying the requirement because DeKalb could have "through minimal diligence" made a "timely motion to intervene in the action as a named plaintiff." Id. (quotation marks omitted).
The "honest mistake" requirement did not come out of thin air. The Rules Advisory Committee has long described Rule 17(a)(3) as a mechanism to account for "when an honest mistake has been made in choosing the party in whose name the action is to be filed." Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment (emphasis added). The Advisory Committee's Notes on Rule 17(a)(3), which are "a reliable source of insight into the meaning of [the] rule," United States v. Vonn, 535 U.S. 55, 64 n.6, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), directly contradict the majority's view that a "plaintiff's honest mistake is not a precondition for granting a Rule 17(a)(3) motion," Majority Op. at 227. The Notes also comport with our previously expressed view that a "district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party." Advanced Magnetics, 106 F.3d at 20.
The majority avoids its duty to follow DeKalb (to say nothing of the Advisory Committee's Notes) in two ways.
First, it characterizes DeKalb's central holding as "dicta." Majority Op. at 227-28. But DeKalb's"honest mistake" requirement is not dictum: We squarely held that DeKalb's Rule 17(a)(3) argument failed in the absence of an "honest," "understandable," or "reasonable" basis for not seeking to become the lead plaintiff in the action sooner. 817 F.3d at 412 (quotation marks omitted). We also held, in the alternative, that even if DeKalb had made an honest mistake, its motion could not relate back to another party's timely complaint under the circumstances of that case. Id. at 412-13. This alternative holding did not downgrade our "honest mistake" holding to dictum. To the contrary, our determination that DeKalb's motion failed to satisfy the "honest mistake" requirement is "an entirely appropriate basis for a holding in th[is] later case."
*231 Pyett v. Pa. Bldg. Co., 498 F.3d 88, 93 (2d Cir. 2007), rev'd on other grounds sub nom. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009).
Second, the majority reasons that "requiring 'a semblance of a reasonable basis' for a real party in interest's 'tardy appearance' is not the same as requiring that party to establish that she made an 'honest mistake.' " Majority Op. at 227. In my view, there is no logical distinction between the two phrases: A party that has no "semblance of any reasonable basis" for naming the wrong plaintiff necessarily has not made an "honest mistake" in naming the wrong plaintiff, and vice versa.
With DeKalb's holding in mind, on this record Judge Ramos got it right when he concluded that Klein and Qlik failed to demonstrate that they made an "understandable" or "honest" mistake in not earlier seeking to make Qlik the plaintiff (or, put another way, that there was a "semblance of any reasonable basis" for their delay). Recall that Qlik rejected Klein's initial demand to sue the defendants based on their alleged short-swing trading. Then Klein and Qlik waited until months after Qlik's merger was publicly announced and ultimately closed to move to substitute Qlik as the plaintiff. Had they exercised even "minimal diligence," they could have filed "a timely motion." See DeKalb, 817 F.3d at 412 (quotation marks omitted).
The majority worries that a "needless multiplicity of [Section 16(b) ] actions" would flow from affirming Judge Ramos's decision to reject the Rule 17(a)(3) motion in this case. Majority Op. at 228 (quotation marks omitted). With respect, that is a policy justification, not a legal one rooted in the Rule. And even if there were evidence to support the majority's worry (there is not), "district courts have ample tools at their disposal to manage the suits, including the ability to stay, consolidate, or transfer proceedings." China Agritech, Inc. v. Resh, --- U.S. ----, 138 S.Ct. 1800, 1811, 201 L.Ed.2d 123 (2018).
For these reasons I dissent.